**In re NEW ITEMS COMPANY, INC., Debtor.**

**Bankruptcy No. B81-3410.**

United States Bankruptcy Court, N.D. Ohio, E.D.

May 15, 1987.

William H. Lukens, Cleveland, Ohio, for debtor.

Stephen D. Hobt, Cleveland, Ohio, for TSC Leasing Corp.

Saul Eisen, Cleveland, Ohio, for trustee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the Trustee's objection to a claim filed by TSC Leasing Corporation (TSC) against the estate of New Items Company, Inc. (Debtor). Upon a review of the parties' respective briefs and arguments thereon, the following constitutes the Court's findings pursuant to Rule 7052, Bankr. Rules:

### I.

The Debtor and TSC entered into two agreements, purportedly lease transactions, wherein TSC was to provide the Debtor with certain refurbished computer equipment for a specified period of months at an agreed-upon monthly rate. In addition to the monthly rate, the Debtor was to pay a use tax which was inclusive of state and local taxes on the subject equipment. Specifically, the first transaction's payment schedule required a total of seventy-two (72) monthly payments of $1,355.20 each to TSC for a total payment of $97,574.40. The second transaction, also concerning refurbished computer equipment, required monthly payments of $468.46 over a seventy-two (72) month period, or a total payment of $33,729.12.

The equipment in both transactions included varying quantities of disc drives, printers, visual display units, cartridges and a controller board (the equipment). All of the equipment was earlier obtained by TSC from its parent corporation, Triad Systems Corporation, for a total purchase price of $75,550.00. By stipulation, the parties hereto have agreed that, for the Court's resolution of this matter, the subject equipment will have a market value at the end of both agreement periods of no less than $3,739.00 and no greater than $15,000.00.

Prior to the termination of either of the above agreements, the Debtor was adjudicated a bankrupt by reason of the filing of

an involuntary petition under Chapter 7. Subsequent thereto, TSC sought relief from the automatic stay pursuant to 11 U.S.C. 362(d)(2). Such relief was granted, and TSC took possession of the subject equipment and caused it to be sold, without notice to Debtor, at private sale for $32,-640.00. TSC then caused to be filed its proof of claim in the amount of $81,446.94, representing the difference between the amount due under the aforementioned contracts and the amount received on resale:

| | |
|---|---|
| Total Payment Due | $124,458.48 |
| Six (6) Payments Received | (10,371.54) |
| Resale of Equipment | (32,640.00) |
| Claimed Amount | $ 81,446.94 |

Upon the filing of TSC's proof of claim, the Trustee's objection ensued.

## II.

The issues before the Court are two-fold. First, the Court must determine the nature of the transactions, that is, whether the agreements constituted secured transactions or whether they were true leases. Secondly, the Court must determine whether provisions of U.C.C. 9–504(3) effectively bar a creditor from recovering on a deficiency where no notice of sale was given to the Debtor. The Trustee contends that the subject transactions are disguised security interests as opposed to leasehold interests, notwithstanding the fact that the agreements are both captioned "Lease Agreement." Further, the Trustee contends, without dispute, that TSC never perfected its interest in the equipment.

Whether a transaction is to be characterized as a lease or a security interest is dependent upon the intent of the parties as of the time the agreement was executed. *In re Telemax Corp.*, 10 U.C.C.Rep. 1316 (S.D.N.Y.1971). The labelling affixed to the agreement is not necessarily conclusive. *See also, In re Alpha Creamery Co.*, 4 U.C.C.Rep. 794 (W.D.Mich.1967). By definition, U.C.C. § 1–201(37) defines a lease subject to a security interest as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.... Unless a lease or consignment is intended as security, reservation

of title thereunder is not a "security interest".... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. U.C.C. § 1–201(37).

As stated above, whether a transaction is to be construed as a lease or as a secured interest is based upon the facts of each case. An examination of the subject transactions reveals that the parties executed two separate "Lease Agreements" for the used computer equipment on payment terms heretofore described. Additionally each agreement contained thirty-one (31) identical terms and conditions regarding the equipment transaction. Upon careful examination of the several terms and conditions, the following are remarkable to a determination of the present issues:

1. The parties were respectively identified as "lessor" and "lessee" (Ex. A., para. 1);

2. The lease term was non-cancellable and was commenced only upon the Lessor's acceptance (Ex. A, para. 3);

3. Both transactions were captioned "Lease Agreement" (Ex. A);

4. As rent for the equipment, the (Debtor) lessee was obligated to pay TSC the total rent specified in the payment schedule (Ex. A, para. 4);

5. A security deposit, if any was required, was to be returned to the Debtor (lessee), without interest, upon satisfaction of the Debtor's obligation (Ex. A, para. 6);

6. Under "Ownership," the equipment "at all times" was to be the sole and exclusive property of the owner (TSC). Additionally, the Debtor could not "affix or install any of [the equipment] to or on other personal property or to or on any real proper-

ty without first obtaining ..." certain waivers from TSC insuring that the equipment remained free from any lien, encumbrance, right of distraint, or any other claim that might be asserted by a third party (Ex. A, para. 7);

7. Labels were affixed to the equipment indicating TSC's ownership, and the Debtor had no authority to remove such labels (Ex. A, para. 10);

8. TSC reserved the right to inspect the equipment at any and all times during business hours (Ex. A, para. 11);

9. Debtor was obligated to maintain the equipment in serviceable condition at its cost (Ex. A, para. 12);

10. TSC (lessor) was obligated to insure the equipment against risk of loss or damage, subject to a $500.00 deductible which was the Debtor's obligation. Additionally, the Debtor was obligated for insuring risk against any excluded perils not covered by TSC's insurer, as well as providing comprehensive public liability coverage (Ex. A, para. 14);

11. Debtor was obligated to indemnify TSC and hold TSC harmless from any and all claims, actions, suits, costs, expenses, damages and liabilities (Ex. A, para. 16);

12. Debtor was obligated for payment of all taxes related to its use and possession of the equipment (Ex. A, para. 17);

13. On both transactions the Debtor was provided the use of any investment tax credit (Ex. A, Section II);

14. Upon the expiration of the agreements, the Debtor was obligated to return the equipment to TSC at Debtor's cost (Ex. A, para. 23);

15. Both agreements indicated on the front pages that the Debtor was afforded a purchase option (Ex. A, para. 24);

16. The "default" provision under each agreement afforded TSC with an option to terminate the agreement immediately upon the occurrence of certain events, including the filing of a voluntary or involuntary bankruptcy petition by the Debtor. In the event of a default, if termination is exercised by TSC, TSC is allowed to repossess the equipment, without notice, and sell the equipment, without notice, at a public or private sale, (Ex. A, para. 25).

## III.

Generally, where a lessee uses rental equipment for a term less than the equipment's useful life, with an obligation to return the equipment while it still has value, such is characteristic of a true lease. On the other hand, if the lessee is obligated to pay the full purchase price and consequently acquires substantially all of the benefits and risks of being the owner, such is distinguished as a sale, as opposed to a lease. 1 *Bender's Secured Transactions Under The Uniform Commercial Code* § 4A.06. The former comports with the definition of a lease as being an arrangement through which a lessor supplies, or causes to be supplied, equipment or consumer goods to one who desires to use the goods (a lessee) for a period substantially less than the full economic life of the goods. *Id.* at § 4.1.02(1). Thusly, the principal characteristic of a lease is that it allows the lessee the right to use the property for a period substantially less than its economic life, with an attendant obligation to return the property to the lessor while it still has substantial useful life. Some authorities require a 20% residual useful life in the leased item, while others consider 25% as being a reasonable remaining useful life.[1]

If, from the point of lease execution, the scheduled rental payments and other related payments have a then present value of

---

1. Rev.Proc. 75-21 considers 20% of the original cost as representing a residual useful life, while the Financial Accounting Standards Board (FASB) requires the leased item to have a residual estimated life of more than 25%. *Id.* at § 4.1.02(18), (19).

90% or more of the original value of the leased equipment, the lease is deemed for accounting purposes as a capital lease. This has been considered by some as a rough equivalent of the Uniform Commercial Code's (U.C.C.) lease for security. *Id.,* at § 4.1.02(21). Further, such lease is deemed to be a capital lease (i.e., one for security) if the lessee has been given an option to purchase at a bargain price. *Id.* at § 4.1.02(23). Even the two-fold test of the old Uniform Conditional Sales Act (predecessor to the U.C.C. Article 9) is helpful in determining whether a transaction is a true lease or a lease subject to a security interest. Therein, the following had to be satisfied:

(1) Was the lessee obligated to pay an amount equal to the cost of the equipment; and

(2) Would the lessee thereby become, or have the option to become, the owner with a further nominal payment or no payment. USCA § 1(2).

Applying the aforementioned consideration to the facts at bar, an examination of the useful life of the equipment would be helpful; however, the record is silent in this respect and the useful life cannot be discerned. With the total contract price for both transactions totalling $124,458.48, it is apparent that the contract price significantly exceeds TSC's total acquisition cost of $75,550.00. This factor, alone, does not suggest the existence of a security interest. What is significant, however, are the agreement provisions (identical in both transactions) which:

1) Acknowledged the respective parties as "lessor" and "lessee;"

2) Were captioned as "Lease Agreements;"

3) Acknowledged the existence of a returnable security deposit;

4) Noted the fact that the equipment was to be returned to TSC upon the termination of the lease;

5) Contained extensive provisions indicating TSC's full ownership, free from a lien or other encumbrance;

6) Gave lessor retention of the major insurance obligations, with relatively lesser insured risks being the obligation of the Debtor.

Those provisions, *inter alia,* are unequivocal and clearly are indicative of a true lease, as opposed to a security interest. The fact that the agreements both contained a reference to a purchase option does not necessarily make the transactions subject to secured interests. The express language of Paragraph No. 24 in both agreements provides:

24. *Purchase Option.* If it is indicated on the Schedule that Lessee is to have a purchase option with respect to the Equipment, and provided that this lease has not been earlier terminated and that Lessee is not in default hereunder, Lessee may, by written notice delivered to Lessor, not less than six (6) months prior to the end of the term of this lease, elect to purchase all (but not less than all) Equipment covered by this lease for a purchase price equal to that percentage of the system price for such Equipment as is set forth in the Schedule.

■ The front page of both agreements indicate that a purchase option was to be provided the Debtor. Those purchase options, however, were not unconditional. The above language of Paragraph No. 24 of the agreements expressly sets forth the conditions upon which the options could be exercised. Those conditions included a proviso which clearly stated that there must not have occurred a termination and that the Debtor (Lessee) must not be in a position of default at the time it sought to exercise the options. The Debtor's failure to maintain the scheduled payments under the contracts placed it in a position of default. That occurrence negated Debtor's right to exercise the available options under the contracts. (*See,* paragraph 25(a) of the agreements). Similarly, the proviso set forth in U.C.C. § 1–201(37)(b), likewise calls for "compliance" with the terms of the contract. As heretofore found, the breach by the Debtor's failing to make the scheduled payments negated the necessary compliance. Thusly, it also renders moot any concern this Court must otherwise have regarding residual values of the equipment. The fact that the Debtor was subjected to an involuntary Chapter 7 bank-

ruptcy, however, is not an enforceable default provision, contrary to the language of Paragraph 25(c) of both agreements. A provision in an agreement providing that the filing of bankruptcy constitutes default is unenforceable. *In re Jeffrey Glen Winters*, 69 B.R. 145, 15 BCD 659 (D.Or.1986).[2] This Court concurs.

■ To determine whether the subject transactions constitute secured interests affected by Article Nine, the Court has extensively considered not only the statutory requirements of § 1–201(37) but also §§ 9–102, 9–103 and 9–104. To the extent they represent a statutory scheme oftentimes examined to determine the applicability of Article Nine, they are inappropriate to the case at bar. Particular emphasis is given to § 1–201(37)(a) which reads:

... (a) the inclusion of an option to purchase does not of itself make the lease one intended for security,

As heretofore mentioned, this clause is equally applicable to the present situation, as there was an ineffective option. Additionally, § 1–201(37)(b) requires compliance with the contractual terms. Again, such compliance was lacking in the matter *sub judice*. Section 9–102 speaks of intent:

§ 9–102. Policy and Subject Matter of Article

(1) Except as otherwise provided in Section 9–104 on excluded transactions, this Article applies

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property....

The closest reading of the subject transactions indicate no manner in which the parties ever manifested an intent to create a security interest. It also is undisputed that TSC never perfected any security interest in the equipment. The transactions between TSC and the Debtor constituted nothing more than full payment leases. At no time under the contractual provisions was the lessee (Debtor) to acquire substantially all of the benefits and risks of ownership. If such had occurred, it would have created something other than a true lease. Since this Court has characterized the transactions between Debtor and Creditor as true leases, they are not governed by the Notice requirements of Article 9, and failure to comply with U.C.C. 9–504(3) is no bar to recovery by the Creditor.

### CONCLUSION

Accordingly, the Trustee's objections to TSC's claim are denied.

IT IS SO ORDERED.

---

**2.** It is recognized that the *Winters* decision concerned a security agreement; nevertheless, its rationale on this particular point is equally applicable to non-secured agreements.